**James Burnus CLEMONS, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 1180S423.

Supreme Court of Indiana.

Aug. 5, 1981.

114

Patrick E. Donoghue, Sweeney, Winski, Dabagia & Donoghue, Michigan City, for appellant (defendant below).

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee (plaintiff below).

HUNTER, Justice.

The defendant, James Burnus Clemons, was charged with attempted murder, a class A felony, Ind.Code §§ 35–42–1–1 and 35–41–5–1 (Burns 1979 Repl.). He was tried by a jury and found guilty of attempted voluntary manslaughter, a class B felony, Ind. Code §§ 35–42–1–3 and 35–41–5–1 (Burns 1979 Repl.). The Court sentenced him to twenty years' imprisonment. This direct appeal raises the following issues:

1. Whether the trial court erred in denying defendant's motion for change of judge;

2. Whether the trial court erred in admitting certain photographs and a pair of pants into evidence;

3. Whether the court erred in admitting certain testimony of a state's witness relating to a collateral offense and intent;

4. Whether the court erred in refusing to give one of defendant's tendered final instructions; and

5. Whether the court erred in giving certain final instructions over defendant's objections.

A brief summary of the facts from the record most favorable to the state shows that on June 16, 1979, the victim, Bruce Burnett, was shot in the right thigh while he was standing on a street corner in Michigan City, Indiana. Burnett and his cousin, Olan Sims, had spent the earlier part of the evening at a party at a residence on the corner where the shooting occurred. They left the party late in the evening and went to a tavern and then to a restaurant to eat breakfast. Sims was driving during this time. At approximately 3:00 a. m. they returned to the location of the party from the restaurant to get Burnett's automobile which was parked in the backyard of the house. They saw two men who were later identified as Michael Roberts and the defendant walking down the street.

Burnett got into his car but couldn't find his keys. He told Sims to wait while he went into the house to find them. Burnett started towards the house when the two men approached him and one said, "Why are you following us?" A struggle ensued wherein one of the men hit Burnett on the head with karate sticks and the other man shot him in the thigh, although Burnett tried to knock the gun away. Sims was not close enough to see the struggle, but heard the gunshot and saw two men run away.

A police car quickly arrived at the scene and the officer found Burnett standing there with a large patch of discoloration on his right pants leg. Burnett started toward

the police car, but then fell down. The officer saw he was lying in a pool of blood and administered first aid. There was testimony that Burnett would have died from loss of blood if he had not received prompt attention, since both an artery and a vein had been hit.

Roberts testified that he and defendant had visited several taverns that evening. Defendant was drinking heavily and became rowdy. At one tavern they visited, someone gave defendant a handgun. As defendant and Roberts were walking home, defendant shot out a car window, pointed his gun at another person who was driving by in a car, then shot Burnett in the struggle with him. After this incident, defendant shot out another car window before he went into his house.

## I.

Defendant's first allegation of error is that his motion for change of judge was improperly denied. Defendant was charged with the crime of attempted murder on July 6, 1979, and entered into a plea agreement with the state about February 25, 1980, in which he would plead guilty to a charge of battery. However, when the plea agreement was presented to the court on March 28, 1980, the court refused to approve the agreement. Defendant then filed his motion for change of judge under Ind.R. Crim.P. 12, alleging bias and prejudice of the judge based upon the court's refusal to accept the plea agreement and the judge's familiarity with defendant and other members of his family who had previously appeared before this judge.

It is well settled that at the time of this case a defendant had an absolute right to a change of judge when he filed a timely petition in accordance with Criminal Rule 12. *State ex rel. Benjamin v. Criminal Court of Marion Co.*, (1976) 264 Ind. 191, 341 N.E.2d 495. However, since defendant's motion was filed after the expiration of the time limits set forth in the rule, it is governed by the following language:

"Provided, however, that if the applicant first obtains knowledge of the cause for change of venue from the judge or from the county after the time above limited, he may file the application, which shall be verified by the party himself specifically alleging when the cause was first discovered, how it was discovered, the facts showing the cause for a change, and why such cause could not have been discovered before by the exercise of due diligence. Any opposing party shall have the right to file counter-affidavits on such issue within ten [10] days, *and the ruling of the court may be reviewed only for abuse of discretion*. Ind.R.Crim.P. 12 [emphasis added].

██ Defendant's petition is sufficient to comply with the technical requirements of the rule. However, we can review the trial court's actions only for an abuse of discretion. The burden is on defendant to show a clear abuse of discretion by the trial court. *Cade v. State*, (1976) 264 Ind. 569, 348 N.E.2d 394.

██ The main basis upon which defendant relies is that the trial court's rejection of the plea bargain constituted prejudice and bias sufficient to require a change of judge. It is well settled that a defendant has no absolute right to have a guilty plea accepted and that a court may reject a plea in the exercise of its sound judicial discretion. *Santobello v. New York*, (1971) 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427; *Stacks v. State*, (1978) Ind.App., 372 N.E.2d 1201; *Griffith v. State*, (1975) 163 Ind.App. 11, 321 N.E.2d 576. Therefore, the act of rejecting a plea bargain is not sufficient of itself to establish the bias and prejudice of the trial court. We have often held that this Court cannot assume bias or prejudice exists, but must rely upon the record to show evidence thereof. *Kleinrichert v. State*, (1973) 260 Ind. 537, 297 N.E.2d 822. The fact that a defendant has appeared before a certain judge in prior actions does not establish the existence of any bias or prejudice on that judge's part.

██ The record in the instant case does not show that the trial judge participated in the plea bargaining prior to the tender of

the plea agreement on March 28, 1980. Defendant alleges that certain actions of the trial court during the trial, such as the admission of certain exhibits and the giving and refusing of certain instructions show prejudice. We have examined all of these allegations and as we will discuss fully in the following issues, we find no showing of prejudice. Defendant has failed to show that the trial court's denial of his motion for change of venue from the judge was an abuse of discretion.

## II.

■ Defendant next contends that the trial court erred in admitting certain photographs and a pair of pants into evidence. During the testimony of police officer, James West, a pair of men's pants and two photographs of the scene of the shooting were introduced into evidence. Defendant first argues that the witness, West, was not qualified to analyze the substance which discolored the pants and thus the jury was left to speculate as to the nature and characteristic of the exhibit. We find no merit to this contention since the pants were identified as those worn by the victim at the time of the shooting and the officer testified that the victim was lying in a pool of blood.

■ Defendant further argues that since the photographs of the scene had an outline on them made with chalk marks appearing to depict the outline of a human body, they were highly prejudicial and inflammatory and invited the inference that a homicide had been committed. We find no basis for defendant's argument as he was charged with and was being tried for attempted murder. It is well settled that photographs are properly admissible when testimony concerning that which they depict would be proper. *Moore v. State,* (1981) Ind., 414 N.E.2d 558; *Pierce v. State,* (1970) 253 Ind. 650, 256 N.E.2d 557. There was no error in the admission of these exhibits.

## III.

■ Defendant next argues that the court erred in admitting certain testimony of his companion on the night of the shooting, Michael Roberts. Roberts was allowed to testify, over defendant's objection, that he and defendant had been drinking together on the night of the shooting. He also testified that he had smoked some marijuana that night and believed defendant had also smoked some. Defendant objected to this testimony on the basis that it constituted evidence against him of a separate offense with which he was not charged and that it was also an attempt by the prosecutor to impeach his own witness.

We find no error here since this state has long recognized that happenings near in time and place which complete the story of the crime are admissible under the theory of *res gestae. Brown v. State,* (1981) Ind., 417 N.E.2d 333; *Gross v. State,* (1977) 267 Ind. 405, 370 N.E.2d 885.

■ Defendant also objected to the following testimony of Roberts:

Q. "Why did you hit him with your karate sticks?"

MR. DONOGHUE: "Objection. I think it is irrelevant why he did it."

\* \* \* \* \* \*

THE COURT: "Overruled. He can answer it."

Q. "Mr. Roberts, why did you strike this man?"

A. "I was trying to keep anybody from getting shot at that time. Clemons had already shot out a car window and at that time I was more or less scared and I wanted to avoid the whole issue of anybody getting shot."

We find no error here, as this testimony was explanatory of facts in evidence and involved only the witness's own state of mind and conclusions. *Smith v. State,* (1981) Ind., 419 N.E.2d 743; *Porter v. State,* (1979) Ind., 391 N.E.2d 801.

## IV.

■ Defendant next contends that the trial court erred in refusing his final in-

struction No. 6 which covered the defense of intoxication. He admits that the trial court's own instruction on this subject did correctly state the law, but he argues that the instruction was incomplete in that it did not state that the element of specific intent must be inferred by the jury from facts proved beyond a reasonable doubt. However, the court had instructed the jury in a separate instruction No. 4 that the burden rests upon the state to prove each essential element of the crime charged beyond a reasonable doubt. We find that this instruction together with the court's instructions on the defense of intoxication adequately covered this subject.

The refusal of a trial court to give a tendered instruction is not reversible error if the substance of the instruction is adequately covered by other instructions given by the court. *Gilmore v. State*, (1981) Ind., 415 N.E.2d 70; *Richmond v. State*, (1979) Ind., 387 N.E.2d 1312; *Toliver v. State*, (1978) 267 Ind. 575, 372 N.E.2d 452.

### V.

Defendant finally alleges error in seven of the trial court's final instructions. He first alleges error in the court's instruction No. 5 which defined the crime of attempted murder in the following language:

"The crime of attempt is defined by statute as follows: A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. An attempt to commit a crime is a felony or misdemeanor of the same class as the crime attempted. However, an attempt to commit murder is a Class A felony.

"To convict the defendant the State must have proved each of the following elements:

"The defendant James Burnus Clemons,

1. did knowingly or intentionally,

2. shoot a hand gun at and hit the body of Bruce Burnett with the bullet

3. that the conduct was a substantial step toward the commission of the crime of Murder.

"If the State failed to prove each of these elements, you should find the defendant not guilty.

"If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of the crime of attempt, a Class A felony."

Defendant contends that this instruction is incomplete in that it does not set forth the element of specific intent to kill but only mentions the knowing or intentional shooting of the gun. We find no merit to this argument since the court further instructed the jury on the definition of the crime of murder in instruction No. 6 and the necessary element of the specific intent to kill is correctly set out therein. The court's instructions taken as a whole adequately covered the definition of attempted murder.

Defendant next alleges that four of the court's instructions were erroneous as they dealt with definitions of the lesser included offenses of attempted involuntary manslaughter and attempted reckless homicide. Defendant is correct that there are no statutory crimes of attempted involuntary manslaughter and attempted reckless homicide in this state. This Court has recently confirmed this position. *Smith v. State*, (1981) Ind., 422 N.E.2d 1179. However, it is clear that the crime of attempted voluntary manslaughter does exist in this state. *Abbott v. State*, (1981) Ind., 417 N.E.2d 278. The defendant was found guilty of the crime of attempted voluntary manslaughter and the jury was properly instructed concerning that crime. Therefore, we find that the giving of the complained of instructions must be deemed harmless since no instructions on those alleged crimes were warranted and their presence would not have misled the jury in its consideration of the other proper instructions. *Raspberry v. State*, (1981) Ind., 417 N.E.2d 913; *Pulliam v. State*, (1976) 264 Ind. 381, 345 N.E.2d 229.

Defendant next alleges that the court's instruction No. 28 which covered the weight to be given to evidence of flight was

erroneous and prejudicial as there was no evidence of flight presented. There is no merit to this contention since at least two witnesses testified that two men "ran away" from the scene. Although defendant and Roberts presented conflicting testimony in stating that they merely continued walking home, there was sufficient evidence of flight to justify giving the complained of instruction.

■ Defendant finally argues that the court's instruction No. 31 which advised the jury of the various forms of verdict they could use was erroneous because it was incomplete and did not list a form for the crime of criminal recklessness, a class D felony, even though a complete definition of that crime had been given in another instruction. However, defendant did not tender any instruction containing verdict forms. It is well settled that any alleged errors concerning the court's instructions are waived when defendant does not tender his own correct instruction where the court has not instructed as fully as defendant believes is necessary. *Miller v. State*, (1978) 267 Ind. 635, 372 N.E.2d 1168; *Brown v. State*, (1976) 264 Ind. 484, 346 N.E.2d 559.

For all of the foregoing reasons, there was no reversible error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and PRENTICE and PIVARNIK, JJ., concur.

DeBRULER, J., concurs in result.