# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 03-1384

KEITH B. CANAAN,

*Petitioner-Appellee,*

v.

DANIEL R. MCBRIDE, Warden,[*]

*Respondent-Appellant.*

———————

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 97 C 1847—**David F. Hamilton**, *Judge.*

———————

ARGUED NOVEMBER 20, 2003—DECIDED JANUARY 11, 2005

———————

Before BAUER, ROVNER, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* In the early morning hours of December 29, 1985, a police officer arrived at Lori Bullock's apartment in Evansville, Indiana. The apartment had been ransacked and the officer found Bullock dead, with a butcher knife protruding from her throat and almost two dozen stab

———————

[*] Daniel R. McBride is substituted as respondent for Cecil Davis following Canaan's transfer to the Maximum Control Facility at Westville, Indiana.

wounds. Keith B. Canaan was arrested two days later and charged with the crime. A jury convicted Canaan of murder, burglary, and attempted criminal deviate conduct. At the sentencing hearing that followed, Canaan's counsel presented no mitigating evidence. Faced only with two aggravating factors, the jury recommended the death penalty. The judge accepted that recommendation and sentenced Canaan accordingly.

After unsuccessfully seeking post-conviction relief, Canaan filed a petition for a writ of habeas corpus. The district court granted him relief on three grounds. The first, in which the court found Canaan's trial counsel ineffective for failing to advise him that he had the right to testify at the penalty phase of his trial, affected only his death sentence. The second and third grounds resulted in the vacation of his conviction for attempted criminal deviate conduct. The court found that the jury instruction for attempted criminal deviate conduct failed to require the State to prove beyond a reasonable doubt that Canaan had acted with specific intent with respect to this crime, that this omission violated his due process rights, and that his counsel was ineffective for failing to object to this jury instruction. We affirm the district court's judgment granting habeas corpus relief with respect to the death sentence, but we reverse with respect to the conviction for attempted criminal deviate conduct.

# I

The following account of the underlying facts comes from the opinions of the Indiana courts that considered Canaan's case. One or two weeks before Bullock's death, Canaan had knocked on the door of Bullock's apartment and asked her roommates whether he could wait in their living room until their upstairs neighbors arrived. The roommates agreed, and Canaan eventually fell asleep on their couch. The next day, Canaan returned and one of Bullock's roommates per-

mitted him to use their phone. The evening of Bullock's murder, Canaan knocked on the door of her upstairs neighbor, who later testified that he seemed nervous and "had a strange look." Canaan then went downstairs and was heard knocking on the door of a first-floor apartment. Bullock lived on the first floor. Around midnight, Canaan was seen at a Bennigan's restaurant with substantially more money than he had possessed earlier in the day. Several hours later, at another restaurant, he asked a waitress how he could remove blood stains from his shirt. Canaan's brother testified that Canaan had told him that he killed a "biker" at a bar the night before, and Canaan's friend testified that the afternoon following the murder, Canaan had noticed some police nearby and said, "I've got to get out of here." Finally, Canaan's fingerprint was found on a box of spaghetti found in Bullock's apartment.

Canaan was charged with murder, burglary, and criminal deviate conduct, as well as being a habitual offender. The State sought the death sentence based on the charged aggravating circumstance of intentional killing during the crimes of burglary and criminal deviate conduct, IND. CODE § 35-50-2-9(b)(1). The jury convicted Canaan on all three counts. At the penalty phase, it found Canaan guilty of being a habitual offender, thereby making him eligible for an additional thirty-year sentence. See IND. CODE § 35-50-2-8(h). Next, a death penalty hearing was held before the same jury. Canaan did not testify at this hearing, and his counsel presented no mitigating evidence. The jury recommended that Canaan be sentenced to death. On November 26, 1986, the court found that Canaan intentionally killed Bullock while committing burglary and attempted criminal deviate conduct. In the absence of any mitigating circumstances, it concluded that there was nothing to outweigh the two aggravating factors. On this basis, the court sentenced Canaan to death.

Canaan appealed his conviction to the Indiana Supreme Court, which affirmed. *Canaan v. State*, 541 N.E.2d 894 (Ind. 1989) ("*Canaan I*"), *cert. denied*, 498 U.S. 882 (1990). Canaan's trial lawyers also represented him on direct appeal. Canaan then filed a petition for post-conviction relief, which the Indiana post-conviction court denied. After unsuccessfully appealing to the Indiana Supreme Court, *Canaan v. State*, 683 N.E.2d 227 (Ind. 1997) ("*Canaan II*"), *cert. denied*, 524 U.S. 906 (1998), Canaan filed a petition for a writ of habeas corpus. The district court found no flaws in Canaan's convictions for murder and burglary, but it concluded that "Canaan's petition must be granted with respect to the death sentence and the conviction for attempted criminal deviate conduct." The court found that Canaan was denied effective assistance of counsel at the death penalty phase when his lawyers failed to discuss with him whether he should testify. The court also concluded that the jury instruction on attempted criminal deviate conduct denied Canaan due process of law because it did not require the jury to find beyond a reasonable doubt the essential element of a specific or conscious intent to penetrate the sex organ of the victim with an object. Finally, the court found that Canaan received ineffective assistance of counsel based on his trial attorneys' failure to object to those jury instructions. On this basis, the court issued a writ of habeas corpus vacating Canaan's death sentence and his conviction for attempted criminal deviate conduct. The State has appealed.

## II

### A

We consider first the order vacating Canaan's death sentence. The district court granted his petition in that respect based on its finding that Canaan received constitutionally ineffective assistance of counsel when his trial attorneys,

Barry Standley and Beverly Harris, failed to consult with him about whether he should testify at the penalty phase of the trial. On appeal, the State argues that his claim that he was "denied the right to testify" was procedurally defaulted because Canaan did not fairly present it to the Indiana Supreme Court. See 28 U.S.C. § 2254(b)(1); *Baldwin v. Reese*, 124 S.Ct. 1347, 1349 (2004); *Harris v. McAdory*, 334 F.3d 665, 668 (7th Cir. 2003).

The State's articulation of its argument makes plain the flaw in it: Canaan seeks habeas corpus relief not on the ground that he was "denied the right to testify," as the State suggests, but rather because he was denied effective assistance when his counsel failed to *advise him* of his right to testify. Because the distinction between these claims is significant, it is necessary to review the evolution of Canaan's ineffective assistance of counsel claim before the Indiana courts. Canaan's post-conviction petition alleged that he "was denied the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States [because] . . . [c]ounsel for petitioner failed to call petitioner as a witness during the death penalty phase of the trial." The Indiana post-conviction trial court rejected this argument, stating that "[t]he decision not to call Petitioner as a witness during the penalty phase of the trial is proper trial strategy." That court also found that "during the preparation for the trial, both Counsel Standley and Co-Counsel Harris discussed with petitioner his right to testify at both the guilt and penalty phases of the trial." Harris testified, however, that "when we talked about him testifying at the trial, we were also regarding that towards the penalty phase." There is no indication that Canaan knew that this was the lawyers' intention, nor that counsel ever advised him about the risks and benefits of testifying at the penalty phase after he lost at the guilt phase.

On appeal to the Indiana Supreme Court, Canaan argued that his counsel was ineffective not only for "decid[ing] not to call Canaan as a witness at the penalty phase of the trial," but also for "fail[ing] *to consult with him* regarding the decision." Canaan suggested that his sentence might have been different had he been permitted to testify, in that "he could have filled in major gaps in the jury's knowledge regarding him." The Indiana Supreme Court never addressed Canaan's argument that counsel failed to consult with him about the desirability of testifying at the penalty phase, when virtually all of the strategic reasons for refraining from testifying had become moot. It instead addressed only the argument that "counsel was ineffective for not calling him as a witness at the penalty phase," and on that point it "affirm[ed] the post-conviction court's conclusion that Canaan ha[d] failed to demonstrate that the decision not to call Canaan as a witness during the penalty phase constituted ineffective assistance of counsel." *Canaan II*, 683 N.E.2d at 229-30. In his habeas corpus petition, Canaan reiterated his ineffective assistance of counsel claim, asserting among other things that "[n]either of his lawyers even discussed with him whether he should testify during the death sentence hearing," even though "under the circumstances, he was the only source of mitigating information." On this basis, the district court found that Canaan was "entitled to relief from his death sentence."

Although Canaan argued that his counsel was ineffective for failing to advise him that he could testify in his filings to both the Indiana Supreme Court and the district court, the State makes no mention of this claim in its briefs before this court. Rather, it contends only that "a claim that Canaan was denied the *right to testify* was barred by procedural default." Likewise, before the district court, the State argued that "to the extent that Petitioner's claim is that he was denied his right to testify—rather than his right to effective assistance of counsel—that claim is barred by

procedural default as it was not raised in the state courts." Thus, despite three opportunities to assert procedural default—before the Indiana Supreme Court, the district court, and this court—the State has never done so. The State's silence is significant because by failing to object to Canaan's claim on procedural default grounds, the State has waived (or, more properly, forfeited) this argument. See *Gregory-Bey v. Hanks*, 332 F.3d 1036, 1043 (7th Cir. 2003) ("As a procedural default is not jurisdictional, any argument that [a habeas petitioner] has defaulted his . . . claim can be waived by the government."); *Hernandez v. Cowan*, 200 F.3d 995, 997 (7th Cir. 2000) (finding "waiver of waiver, now a well-established doctrine," where the State failed to object to a habeas petitioner's failure to seek state supreme court review in his direct appeal and post-conviction proceedings); *cf. Momient-El v. DeTella*, 118 F.3d 535, 540 (7th Cir. 1997) (refusing to find waiver of waiver by the State where it presented its procedural default argument for the first time on appeal to this court). As we are under no obligation to invent a procedural default argument never raised by the State, we move to the merits of Canaan's claim.

At the outset, we must address the standard under which we review Canaan's ineffective assistance of counsel claim. Both parties and the district court assume that the standard provided in 28 U.S.C. § 2254(d) of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs our analysis, but this position is not necessarily correct. Ordinarily, § 2254(d) requires that we determine whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." "This standard only applies, however, to a 'claim that was adjudicated on the merits in State court proceedings.'" *Braun v. Powell*, 227 F.3d 908, 916 (7th Cir. 2000) (quoting

28 U.S.C. § 2254(d)); see also *Oswald v. Bertrand*, 374 F.3d 475, 477 (7th Cir. 2004); *Walton v. Briley*, 361 F.3d 431, 432 (7th Cir. 2004) ("The Antiterrorism and Effective Death Penalty Act of 1996 does not apply in this case because the state courts did not adjudicate the claim on the merits."); *Ouska v. Cahill-Masching*, 246 F.3d 1036, 1044 (7th Cir. 2001). The record in this case gives no indication that the Indiana courts were aware that Canaan had presented to them a claim of ineffective assistance of counsel based on the failure to consult ground. Although he squarely presented this argument to the Indiana Supreme Court, its decision makes no mention of this issue, even to reject it on procedural grounds or to indicate that it found no need to discuss the remaining issues in the case.

When a state court is silent with respect to a habeas corpus petitioner's claim, that claim has not been "adjudicated on the merits" for purposes of § 2254(d). See *Hough v. Anderson*, 272 F.3d 878, 904 n.13 (7th Cir. 2001) (reviewing the petitioner's claim *de novo* because "[t]he Supreme Court of Indiana did not address this argument specifically in its opinion"). As a practical matter, a federal court cannot apply the deferential standard provided by § 2254(d) in the absence of any state court decision on the issue. See *Fortini v. Murphy*, 257 F.3d 39, 47 (1st Cir. 2001) ("AEDPA imposes a requirement of deference to state court decisions, but we can hardly defer to the state court on an issue that the state court did not address."); *Hogan v. Gibson*, 197 F.3d 1297, 1306 (10th Cir. 1999) (holding that because the state court "made no findings" as to the merits of the petitioner's claim, "it is axiomatic that there are no findings to which we can give deference" and thus § 2254(d) does not apply). As we said in *Braun*, "[a]ccordingly, we shall not employ the standard of review set forth in AEDPA but, rather, must rely upon the general standard as set forth in 28 U.S.C. § 2243," which requires that we " 'dispose of the matter as law and justice require.' " 227 F.3d at 917 (quoting § 2243).

See also *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003); *Norde v. Keane*, 294 F.3d 401, 410 (2d Cir. 2002); *Hameen v. State of Del.*, 212 F.3d 226, 248 (3d Cir. 2000); *Mueller v. Angelone*, 181 F.3d 557, 570 n.9 (4th Cir. 1999).

This understanding of § 2254(d)'s scope is consistent with the Supreme Court's decision in *Wiggins v. Smith*, 539 U.S. 510 (2003). Applying § 2254(d), the Court held that the state post-conviction court had relied on an erroneous factual assumption and unreasonably applied *Strickland*'s performance prong in rejecting the habeas corpus petitioner's ineffective assistance of counsel claim. 539 U.S. at 534. The Court then considered whether the petitioner had satisfied *Strickland*'s prejudice requirement. *Id.* In doing so, the Court did not apply § 2254(d), noting that "our review is not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the *Strickland* analysis." *Id.* In light of *Wiggins* and the consistent decisions of this and other circuits, we conclude that our review of Canaan's ineffective assistance of counsel claim is governed not by § 2254(d), but by § 2243, such that we must "dispose of the matter as law and justice require." (We add, however, that our ultimate resolution of the case would not change even if we were asking whether the state court's silence amounted to an unreasonable application of the law or determination of the facts, for the reasons we discuss here.)

Under *Strickland*, "[f]irst, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance pre-judiced the defense." 466 U.S. 668, 687 (1984). The State contends that Canaan cannot prevail on his ineffective assistance of counsel claim because he "*was* advised of his right to testify and accepted his counsels' advice." In sup-port, the State cites the Indiana post-conviction court's find-ing that "during the preparation for the trial, both Counsel Standley and Co-Counsel Harris discussed with petitioner

his right to testify at both the guilt and penalty phases of the trial." Despite the deference to which the state courts are entitled, we conclude that this finding cannot stand. The quoted statement is flatly contradicted by Standley's and Harris's testimony during Canaan's post-conviction hearing acknowledging that they had not spoken with him regarding his testifying at the penalty phase. (The testimony Harris offered, to which we referred earlier, does not contradict this statement—as we noted, she did not say that Canaan knew they meant to include the penalty phase, and she certainly did not say that they ever gave Canaan any advice about the penalty phase that took into account the critical facts of the jury's convictions and findings on habitual offender status.) When asked if he had addressed testifying at the penalty phase with Canaan, Standley stated, "I would say I probably didn't. It is just not something that ever really crossed my mind that you ought to do." Harris likewise testified, "I don't think we asked him if he wanted to testify at the death phase." The only hint that Canaan's attorneys raised this issue is Canaan's own proposed finding of fact to the post-conviction court, which stated: "Petitioner was told by trial counsel that he should not testify at *either* part of the trial and that he would not be called as a witness." (Emphasis added.) This statement, however, merely suggests that the earlier generic discussion occurred; it does not indicate that Canaan's counsel discussed this issue with him *at the penalty phase*, when the stakes were substantially different from those at the guilt phase. At oral argument, the State conceded that the Indiana post-conviction court made no finding that Canaan's counsel had consulted with him at the penalty phase regarding his testifying. Moreover, the testimony of Canaan's counsel shows that this conversation never occurred. The district court thus did not err in finding that "the evidence from Canaan's lawyers shows that they did not ever discuss with him whether he should testify at the critical penalty phase of the trial."

We turn, then, to the question whether Canaan's counsel's failure to advise him that he was entitled to testify at the penalty phase constituted deficient performance. Under *Strickland*, Canaan must prove that his trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Our review of the adequacy of his counsel's performance must be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted). The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct." *Wiggins*, 539 U.S. at 521. Instead, it has "emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Id.* (quoting *Strickland*, 466 U.S. at 688).

We follow the Court's lead in *Strickland* and *Wiggins* by looking first to the ABA Standards for Criminal Justice and the ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases. See *Strickland*, 466 U.S. at 688 ("Prevailing norms of practice as reflected in American Bar Association standards and the like, *e.g.*, ABA Standards for Criminal Justice, are guides to determining what is reasonable." (internal citation omitted)); *Wiggins*, 539 U.S. at 522. While these standards are not determinative, see *Strickland*, 466 U.S. at 688-89, they nonetheless represent "well-defined norms" on which the Court has routinely relied, see *Wiggins*, 539 U.S. at 524. These sources confirm that Canaan's counsel fell short of professional norms when they failed to consult with him regarding his testifying at the penalty phase. Under the heading "The Defense Case Concerning Penalty," the ABA Guidelines provide that "[c]ounsel should consider, *and dis-*

*cuss with the client*, the possible consequences of having the client testify or make a statement to the sentencing or reviewing body or individual." ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases Guideline 10.11 (2003) (emphasis added). The ABA's Commentary to Guideline 10.11 reiterates this standard: "Counsel should also consider, *in consultation with the client*, the possibility of the client expressing remorse for the crime in testimony, in allocution, or in a post-trial statement." *Id.* Guideline 10.11 cmt. Likewise, in its section on Defense Function, the ABA Standards for Criminal Justice provide that "[d]efense counsel should alert the accused to the right of allocution" at sentencing. ABA Standards for Criminal Justice, Defense Function Standard 4-8.1(d) (3d ed. 1993). Finally, the National Legal Aid and Defender Association's Performance Guidelines state that "[i]n preparing for sentencing, counsel should consider the need to . . . inform the client of his or her right to speak at the sentencing proceeding." National Legal Aid and Defender Association Performance Guidelines for Criminal Defense Representation 8.3 (1995). In failing to advise Canaan of his right to testify at the penalty phase, Canaan's counsel also defaulted on their "duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland*, 466 U.S. at 688; see also IND. RULES OF PROF'L CONDUCT R. 1.4(b) ("A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."); *Hall v. Washington*, 106 F.3d 742, 749 (7th Cir. 1997) (emphasizing that "[i]n the context of a capital sentencing hearing, it is particularly important that counsel not be allowed to shirk her responsibility").

Even apart from these general standards, the conduct of Canaan's counsel was deficient when viewed in light of the facts and circumstances of his case. See *Strickland*, 466 U.S. at 688 ("[T]he performance inquiry must be whether

counsel's assistance was reasonable considering all the circumstances."). In their testimony at the post-conviction hearing, Canaan's counsel did not suggest that their failure to advise him that he could testify at the penalty phase arose from any "sound trial strategy." See *id.* at 689. Rather, attorney Standley testified that "[i]t is just not something that ever really crossed my mind that you ought to do." See *Wiggins*, 539 U.S. at 526 (finding counsel's conduct unreasonable where it "resulted from inattention, not reasoned strategic judgment"). While attorney Harris explained that they decided not to call Canaan as a witness at the *guilt* phase because "his prior impeachable offenses . . . were just terrible" and he had a cool demeanor, she did not suggest that either of these justifications were persuasive in the context of the penalty phase of Canaan's trial. Because Canaan's attorneys opted to conduct his habitual offender status determination before the sentencing phase, the jury already knew about his prior offenses. As we have already noted, his attorneys presented *no* mitigating evidence at the sentencing hearing, even though the court and the jury had before them two aggravating factors and attorney Standley was aware, in his own words, that Canaan "didn't have a very good upbringing." Thus, as Canaan's counsel acknowledged in the post-conviction hearing, "by the time the jury decided the death penalty portion of his trial, the only background information they would have had would have been his prior record." In the absence of any other mitigating evidence, counsel should have informed Canaan of his right to testify on his own behalf.

Instead of receiving advice from counsel, Canaan received none at the critical moment. We note in this connection that such advice might go either way: a competent lawyer might advise a client like Canaan to testify, but under some circumstances she might equally advise a client not to testify. The point here is that the final choice must be the client's, after receiving whatever advice the lawyer chooses

to offer. In Canaan's case, given the importance of his testimony as the only mitigating evidence available to the jury, and the professional norms emphasizing counsel's obligation to advise a defendant of his right to testify at the penalty phase, Canaan's lawyers were deficient in failing to consult with him about this issue.

Canaan can prevail on his *Strickland* claim, however, only if he can show that his counsel's deficient performance prejudiced him. To show prejudice in the capital sentencing context, a petitioner must establish "that a reasonable probability exists that, but for counsel's substandard performance, the sentencer 'would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.'" *Hall*, 106 F.3d at 749 (quoting *Strickland*, 466 U.S. at 695). A "reasonable probability" of a different result is one "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "Even if the odds that the defendant would have been acquitted had he received effective representation appear to be less than fifty percent, prejudice has been established so long as the chances of acquittal are better than negligible." *United States ex rel. Hampton v. Leibach*, 347 F.3d 219, 246 (7th Cir. 2003).

As we have discussed, Canaan's testimony at the penalty phase would have been the only mitigating evidence the jury heard. The Indiana death penalty statute requires the jury to weigh aggravating and mitigating circumstances before recommending a sentence, IND. CODE § 35-50-2-9(l), and so the effect of presenting no mitigating evidence at the penalty phase was that the jury considered only the two aggravating circumstances. With nothing to put on the mitigating side of the scale, the jury was almost certain to choose a death sentence. The testimony Canaan was prepared to offer, which he presented at his post-conviction hearing, may have persuaded the jury to be lenient. Canaan described a deeply troubled history of the kind the Supreme

Court has found relevant at the penalty phase. See *Wiggins*, 539 U.S. at 535. Specifically, Canaan would have testified to his lifelong struggle with drugs and alcohol and to the physical and emotional abuse he suffered as a child. Canaan's father often beat him until his mother or brother intervened. After Canaan's father caught him sniffing paint, he spray-painted the entire left side of Canaan's body. On several occasions, Canaan's mother forced him and his siblings into the family's car and drove recklessly towards their house, threatening to kill everyone because "her nerves had about had it." When Canaan was later placed in a juvenile facility, he was diagnosed as "dangerous to self and others," and had to go through "reality therapy." Canaan's testimony also chronicled a lengthy history of substance abuse. At age sixteen, Canaan was charged with auto theft, and the court ordered him to see a psychologist to address his chemical dependency. His parents refused to pay the $50 per visit charge, however, so he never received treatment. Canaan further testified that between the ages 16 and 27, when he was arrested for Bullock's murder, there were no significant periods of time when he *did not* regularly use alcohol and drugs, including PCP, marijuana, acid, Quaaludes, and cocaine. During Canaan's 42-month incarceration at Westville Correctional Institute, from which he was released shortly before he was arrested for killing Bullock, he used cocaine twice a week, as well as marijuana and PCP (an unfortunate comment on the state's correctional institutions, as well as on Canaan). He was addicted to cocaine when released and used alcohol and cocaine until his arrest.

This account makes clear that Canaan "has the kind of troubled history we have declared relevant to assessing a defendant's moral culpability." *Wiggins*, 539 U.S. at 535 (citing *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989) ("[E]vidence about the defendant's background and character is relevant because of the belief, long held by this society, that

defendants who commit criminal acts that are attributable to a disadvantaged background . . . may be less culpable than defendants who have no such excuse." (internal quotation marks omitted))); *Eddings v. Okla.*, 455 U.S. 104, 112 (1982) (noting that consideration of the offender's life history is a "part of the process of inflicting the penalty of death" (internal quotation marks omitted)); see also *Emerson v. Gramley*, 91 F.3d 898, 907 (7th Cir. 1996) (finding prejudice where counsel failed to introduce evidence "of a life that one juror in twelve might find so bleak, so deprived, so harrowing, [and] so full of horrors" as to refuse to recommend death, particularly "[w]ith no evidence of mitigation before the jury despite irrefutable evidence of aggravating circumstances"). Where the state death penalty statute, as in Indiana, requires the sentencer to consider all mitigating factors relevant to imposition of the death penalty, we have emphasized that "defense counsel must make a significant effort . . . to ably present the defendant's fate to the jury and to focus the attention of the jury on any mitigating factors." *Hall*, 106 F.3d at 749 (internal quotation marks omitted). Canaan's counsel fell down in that responsibility. Had the jury been aware of this considerable mitigating evidence, there is a reasonable probability that it would have returned with a different sentence. On this basis, we affirm the district court's grant of habeas corpus relief to Canaan with respect to his ineffective assistance of counsel claim and hold that he is entitled to a new hearing on his sentence.

**B**

The district court also granted Canaan's petition for habeas corpus relief with respect to his conviction for attempted criminal deviate conduct. That conviction, it held, was based on a jury instruction that violated Canaan's due process rights, because the instruction relieved the State of its burden to prove beyond a reasonable doubt Canaan's

specific intent to penetrate Bullock's sex organ with an object. See *In re Winship*, 397 U.S. 358 (1970). In addition, the court held that Canaan's counsel was ineffective in failing to object to this jury instruction. On appeal, the State identifies several reasons for reversal: procedural default of the due process claim, an adequate and independent state ground based on the finding of the state post-conviction court of no fundamental error, and no error on the merits. We agree with the last of these points: reading the jury instructions as a whole, we conclude that they adequately established the elements of attempted criminal deviate conduct under Indiana law at the time of Canaan's trial and sentencing. Canaan therefore cannot prevail on the merits of his due process claim, and we need not reach the State's procedural default argument.

Before addressing the merits of Canaan's claim, we address once again the appropriate standard of review. As we have discussed, the deferential standard imposed by 28 U.S.C. § 2254(d) applies only if Canaan's due process claim was "adjudicated on the merits." See, e.g., *Walton*, 361 F.3d at 432. Otherwise, we evaluate his claim under the pre-AEDPA standard of 28 U.S.C. § 2243, which instructs that we "dispose of the matter as law and justice require." With respect to Canaan's due process claim, the correct standard is not obvious. The Indiana Supreme Court's only discussion of Canaan's claim on post-conviction review consisted of its statement that, "[a]s the post-conviction court properly concluded, this issue was decided adversely to Canaan on direct appeal. It is not available for relitigation here." *Canaan II*, 683 N.E.2d at 236 (internal citation omitted). We have repeatedly held, in the context of deciding whether a petitioner has procedurally defaulted her claim, that where a post-conviction court has "based its disposition of [the petitioner's claim] on its conclusion that the merits of the claim ha[s] been resolved previously," it has conducted "a merit-based determination [that] is not a

bar to further consideration in a federal habeas action."
*Page v. Frank*, 343 F.3d 901, 907 (7th Cir. 2003). This
language suggests that the Indiana Supreme Court's dispo-
sition of Canaan's claim on the ground that it was decided
adversely to him on direct appeal should qualify as an "ad-
judication on the merits" and therefore trigger § 2254(d)'s
deferential standard of review. The difficulty with this
conclusion is that both the Indiana Supreme Court and
post-conviction court erred in finding that Canaan's due
process claim had been decided adversely to Canaan on
direct appeal. In fact, Canaan presented this claim for the
first time on post-conviction review and therefore neither
court considered the merits of the claim on direct appeal.
Therefore, as the Indiana Supreme Court only asserted that
it had addressed the merits of Canaan's claim, but in fact it
never did so, it is not clear that § 2254(d) governs our
analysis. We need not resolve this conundrum, however, as
Canaan cannot prevail even under § 2243's more liberal
standard of review.

In *Winship*, the Supreme Court famously stated: "Lest
there remain any doubt about the constitutional stature of
the reasonable-doubt standard, we explicitly hold that the
Due Process Clause protects the accused against conviction
except upon proof beyond a reasonable doubt of every fact
necessary to constitute the crime with which he is charged."
397 U.S. at 364. In applying *Winship* to jury instructions,
the Court has emphasized that "[b]efore a federal court may
overturn a conviction resulting from a state trial in which
th[e] instruction was used, it must be established not
merely that the instruction is undesirable, erroneous, or
even 'universally condemned,' but that it violated some
right which was guaranteed to the defendant by the
Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141,
146 (1973). Thus, the question for us "is not whether the
trial court failed to isolate and cure a particular ailing
instruction, but rather whether the ailing instruction by

itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 147. Indeed, it is a "well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Id.* at 146-47.

In light of these standards, we must determine whether the jury instructions in Canaan's case, read as a whole, failed to instruct the jury in an element of the crime of attempted criminal deviate conduct, thereby relieving the State of its obligation under the Due Process Clause to prove beyond a reasonable doubt every element of the offense. See *United States v. Gaudin*, 515 U.S. 506, 522-23 (1995); *Jenkins v. Nelson*, 157 F.3d 485, 492 (7th Cir. 1998). The instruction in question reads as follows:

> A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. . . . To convict the defendant of the crime of Attempted Criminal Conduct an included offense of Criminal Deviate Conduct, as charged in Count III, the State must have proved each of the following elements: The defendant
>
> 1. knowingly/intentionally
>
> 2. engaged in conduct that constituted a substantial step toward commission of the crime of Criminal Deviate Sexual Conduct
>
> 3. which conduct was an attempt to penetrate the sex organ of Lori Bullock with an object, to-wit: a knife
>
> 4. the defendant used deadly force.

The jury instructions also defined the term "deviate sexual conduct" as "an act involving: (1) A sex organ of one person and the mouth or anus of another person; or (2) The penetration of the sex organ or anus of a person by an object."

Before deciding whether Canaan's jury instructions re-moved a necessary element of the crime of attempted crim-inal deviate conduct from the jury's consideration, we must first establish the elements of that crime under Indiana law. At issue is whether, at the time of Canaan's trial and sentencing in November 1986, the "specific intent" element of the general crime of attempt required proof that the defendant acted intentionally, that is, with a conscious objective, or whether proof that he acted knowingly would suffice. The Indiana Supreme Court discussed the elements of the crime of attempt in *Zickefoose v. State*, 388 N.E.2d 507 (Ind. 1979), which interpreted Indiana's then-new general attempt statute, IND. CODE § 35-41-5-1 (1978). The court explained that "[a]lthough there are somewhat varying definitions of what conduct actually constitutes an attempt, there is fundamental agreement on the two necessary ele-ments of the crime. First, the defendant must have been ac-ting with a specific intent to commit the crime, and second, he must have engaged in an overt act which constitutes a substantial step toward the commission of the crime." *Id.* at 510; see also *Scott v. State*, 413 N.E.2d 902, 904 (Ind. 1980) ("[A] specific intent is required to prove an attempt."). In light of *Zickefoose*, Canaan contends that the instruction for attempted criminal deviate conduct "fails to inform the jury that before Canaan could be convicted of such offense, they must find that he engaged in the prohibited conduct with the specific intent to commit the crime of criminal deviate conduct." He argues that the instruction wrongly permitted the jury to convict him "of the offense if he 'knowingly' acted against the victim," rather than requiring that it find "that the conduct concurred with the conscientious objective (or specific intent) to accomplish such penetration." The State responds that Canaan is mistaken, because under Indiana law "[a]t the time of Canaan's crime, the required *mens rea* for an attempt crime could be either knowing or inten-tional."

The difficulty in evaluating these competing interpretations of Indiana law arises from the varied meanings attributed to the term "specific intent" by the Indiana courts. See *Richeson v. State*, 704 N.E.2d 1008, 1009 n.1 (Ind. 1998) ("Review of case law from this Court and the Court of Appeals indicates that the term 'specific intent' has several conflicting definitions."). In light of this ambiguity, it is most helpful to ask whether Indiana law at the time of Canaan's conviction required the State to prove that it was Canaan's conscious objective to penetrate the victim's sex organ or whether it allowed the State to prove that Canaan acted knowingly *or* with a conscious objective in penetrating the victim's sex organ. While Canaan relies on *Zickefoose*'s statement that "the defendant must have been acting with a specific intent to commit the crime," 388 N.E.2d at 510, in arguing that the instructions were erroneous, he fails to recognize subsequent Indiana Supreme Court cases clarifying that the element of "specific intent" can encompass *either* intentional conduct—that is, conduct resulting from a "conscious objective"—*or* knowing conduct. In *Scott*, which was decided after *Zickefoose* but prior to Canaan's trial and sentencing, the Indiana Supreme Court reiterated that "a specific intent is required to prove an attempt," but went on to explain that "[t]he very elements of *knowingness or intention* which must be proved in order to establish murder satisfy the State's burden of proving the same elements in an attempt to murder." *Scott*, 413 N.E.2d at 904 (emphasis added). The Indiana Supreme Court further clarified its position in *Woodford v. State*, 488 N.E.2d 1121 (Ind. 1986), which also preceded Canaan's trial. In *Woodford*, the defendant asserted that, under *Zickefoose*, " 'knowingly' is not sufficient culpability for an attempt crime, and a conviction for attempted rape can be sustained only if the State established that the defendant acted 'intentionally.' " *Id.* at 1123. The court squarely rejected this argument, explaining that *Zickefoose* "did not involve distinguishing between the terms 'knowingly' and 'intentionally,' and the

phrase 'specific intent' was used only to generally denote the required culpability." *Id.*

In light of these cases, Canaan cannot state a due process claim based on failure of the jury instructions to require the State to prove that it was his conscious objective to penetrate Bullock's sex organ. Under Indiana law at the time of his trial, it was sufficient for the jury instructions to require that the State prove knowing action on his part. Because the instructions did so, we need not address the State's additional argument that the Indiana Supreme Court's subsequent decisions limited *Zickefoose*'s specific intent rule to cases of attempted murder. See, e.g., *Richeson*, 704 N.E.2d at 1010. As the instruction for attempted criminal deviate conduct required that the State prove beyond a reasonable doubt that Canaan acted "knowingly/intentionally," Canaan's due process rights were not violated by this instruction. See *Winship*, 397 U.S. at 364.

Canaan also argues that even if he cannot prevail on his first challenge to the instructions, his due process rights were still violated because the attempted criminal deviate conduct instruction applied the knowing/intentional conduct requirement to "an *attempt* to penetrate the sex organ of Lori Bullock with an object," not to the penetration itself. The instruction required the jury to find that Canaan "knowingly/intentionally engaged in conduct that constituted a substantial step toward commission of the crime of Criminal Deviate Sexual Conduct," where "conduct" was defined as "an attempt to penetrate the sex organ of Lori Bullock with an object, to-wit: a knife." Read together, these elements of the instruction required that the jury find that Canaan knowingly/intentionally engaged in an attempt to penetrate the sex organ of Lori Bullock. Canaan contends that the instruction therefore was erroneous, because "the *mens rea* language modifies only the conduct element of the crime and not the result (harm) element." The instruction, he continues, fell short in two ways: first, it failed to inform

the jury that the State had to prove that Canaan knowingly or intentionally sought to penetrate Bullock's sex organ; and second, it did not make clear that the State had to do more than prove that he knowingly or intentionally engaged the conduct that constituted a substantial step towards the penetration of her organ. See *Zickefoose*, 388 N.E.2d at 510 (stating that to prove attempt, the State must prove that "the defendant must have been acting with a specific intent *to commit the crime*" (emphasis added)).

In evaluating this claim, we heed the Supreme Court's "well-established proposition that a single instruction to a jury . . . must be viewed in the context of the overall charge." *Cupp*, 414 U.S. at 146-47. While the trial court's articulation of the elements of attempted criminal deviate conduct in the jury instruction may not have been perfect, we must look at the instructions as a whole to determine whether Canaan has presented a valid due process claim. In this regard, the Indiana Supreme Court's decision in *Clemons v. State*, 424 N.E.2d 113 (Ind. 1981), is instructive. The trial court in *Clemons* instructed the jury in attempted murder as follows:

> To convict the defendant the State must have proved each of the following elements:
>
> The defendant James Burnus Clemons,
>
> 1. did knowingly or intentionally,
>
> 2. shoot a hand gun at and hit the body of Bruce Burnett with the bullet
>
> 3. that the conduct was a substantial step toward the commission of the crime of Murder.

*Id.* at 118. The defendant objected that "this instruction is incomplete in that it does not set forth the element of specific intent to kill but only mentions the knowing or intentional shooting of the gun." *Id.* The Indiana Supreme Court found "no merit to this argument since the court

further instructed the jury on the definition of the crime of murder . . . and the necessary element of the specific intent to kill is correctly set out therein." *Id.* On this basis, the court held that the "instructions taken as a whole adequately covered the definition of attempted murder." *Id.*

Under *Clemons*, even if the attempted criminal deviate conduct instruction in Canaan's case did not correctly set out the specific intent requirement, it is still possible that the instructions as a whole adequately conveyed the elements of attempted criminal deviate conduct. We find that this is the case here. The jury instruction for criminal deviate conduct explained that "[a] person who knowingly causes another person to perform or submit to deviate sexual conduct commits deviate sexual conduct." In addition, the criminal deviate conduct instruction provided:

> To convict the defendant the State must have proved each of the following elements: The defendant
>
> 1. knowingly on or about DECEMBER 28, 1985 TO DECEMBER 29, 1985
>
> 2. caused another person, to-wit: LORI L. BULLOCK, to submit to deviate s[e]xual conduct when
>
> 3. the defendant used deadly force.

This instruction clarifies the intent element of the attempted criminal deviate conduct instruction, particularly in light of the latter instruction's explanation that "[a] person attempted to commit a crime when, *acting with the culpability required for the commission of the crime*, he engaged in conduct constituting a substantial step toward commission of the crime." (emphasis added). See *Alexander v. State*, 520 N.E.2d 99, 100 (Ind. 1988); *cf. Smith v. State*, 459 N.E.2d 355, 357-58 (Ind. 1984) (finding fundamental error where the attempted murder instruction required only that the defendant "knowingly[ ] [e]ngaged in conduct that constituted a substantial step toward the commission of Murder,"

but the jury was not instructed in the elements of murder). We acknowledge that in Canaan's case the jury instruction for attempted criminal deviate conduct was not ideal. That said, the jury instructions, when read as a whole, made clear the correct relation and thus communicated the requisite elements of attempted criminal deviate conduct under Indiana law. Canaan therefore cannot establish that the instructions "so infected the entire trial that the resulting conviction violates due process." *Cupp*, 414 U.S. at 147.

In light of this conclusion, Canaan cannot show that his lawyers were ineffective in failing to object to the instructions. As we have found no constitutional error in the instructions themselves, the lawyers' performance with respect to them could not have fallen below the constitutional minimum.

## III

Because Canaan's counsel was ineffective in failing to consult with him regarding his right to testify at the penalty phase of the trial, we AFFIRM the judgment of the district court issuing a writ of habeas corpus on this basis and vacating his death sentence. We REVERSE that part of the district court's judgment granting Canaan habeas corpus relief based on his claims relating to the attempted criminal deviate conduct conviction. The State of Indiana is free to conduct a new death penalty hearing, providing that the State files appropriate documents seeking such relief within 120 days of the mandate of this court.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*